IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SCOTT BAKER,**

      Plaintiff,

vs.                                                            **No. CIV 99-1014 JP/LCS**

**KENNETH S. APFEL**, **Commissioner,**
**Social Security Administration,**

      Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing *(Doc. 9)*, filed May 19, 2000. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is not well taken and recommends that it be DENIED.

**Proposed Findings**

1.        Plaintiff Scott Baker ("Baker") filed an application for disability insurance benefits and Supplemental Security Income ("SSI") disability benefits with the Social Security Administration on November 14, 1996, with an effective filing date of October 31, 1996. *See* Record at 75, 208. Plaintiff alleges that he became disabled on June 22, 1995 due to an injury to his left shoulder. *See id.* at 75-77. Baker's application was denied at the initial level on February 12, 1997, *see* Record at 61, 212, and at the reconsideration level on June 4, 1997, *see* Record at 67, 217. Plaintiff appealed the denial of his claim by filing a Request for Hearing by

1

Administrative Law Judge on June 19, 1997.  *See* Record at 70.

  2. The Commissioner's administrative law judge (ALJ) conducted a hearing on Baker's application on March 17, 1998.  *See* Record at 26.  The ALJ found that Plaintiff met the disability insured status requirement for Title II disability insurance coverage through September 30, 1996.  *See* Record at 13. Therefore, Plaintiff must establish a period of disability beginning no later than that date to qualify for disability insurance benefits under Title II.  However, Plaintiff may qualify for Supplemental Security Income benefits under Title XVI by proving disability at any time up until the date of the administrative decision.

  3. The ALJ analyzed Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). The ALJ found that Baker had not engaged in substantial gainful activity since the onset of his condition (Step 1); that he suffered from a severe impairment or combination of impairments consisting of recurrent left shoulder dislocations and a back injury with narrowing of the L5-S1 disc space (Step 2); and the severity of Baker's impairments has not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599 (Step 3).  *See* Record at 13, 17.  Neither party disputes these findings.

  4. The ALJ then found that Baker's residual functional capacity enabled him to do at least sedentary work that would not require overhead use of his left shoulder, and determined that Baker could not perform any relevant past job (Step 4).  *See* Record at 18.   Because of this finding, the ALJ proceeded to Step 5 of the sequential analysis, where he found that Baker was not disabled based on Rule 201.25, Subpart P, Appendix 2 ("the grids") because he was a younger individual (35 years of age) who could perform at least sedentary work.  *See* Record at

18-19. Plaintiff objects to this finding and, in particular, to the ALJ's reliance on "the grids.".

     5.     The Court's scope of review is limited to whether the ALJ's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *See Hamilton v. Secretary of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

     6.     The record indicates that Baker injured his left shoulder in either 1982, 1986, 1987 1988, or 1992. *See* Record at 174 (1982), 37 (1986 or 1987), 93-94 (1986), 147 (1987), 148 (1988), 77(1992). After reconstructive surgery, his shoulder was stiff, but improved, until he re-injured it during a 1992 or 1993 accident. *See* Record at 38, 149. His shoulder now dislocates frequently when he performs even minor activities. *See* Record at 149, 174. He is right-hand-dominant, *see* Record at 148. Baker complains of considerable pain due to the shoulder injury. *See* Record at 141.

     7.     Baker was also injured in an automobile accident in 1984 or 1985 that caused some injuries to his digestive organs. *See* Record at 35. The record does not show that these injuries have limited Baker's ability to perform work in any substantial way, although he sometimes experiences stomach cramps and must avoid spicy food. *See* Record at 36.

     8.     Baker injured his lower back in a fourth accident in 1990. *See* Record at 149. X-

rays of his lower back in March 1994 indicates slight narrowing at the L5-S1 disc, some straightening of the lumbar spine, and slight posterior marginal spurring. *See* Record at 153. Otherwise, his spinal x-ray was normal. *See id.*

9. A Residual Functional Capacity Assessment (RFC) conducted by Dr. Valerie Dillon on February 6, 1997 indicates that Baker could lift ten pounds frequently and twenty pounds occasionally, could sit for six hours and could stand and/or walk about six hours in a normal workday, and could not reach overhead with his left arm. *See* Record at 190-97. No other exertional, postural, manipulative, or communicative limitations were noted in the RFC. *See id.* An examination of Baker by Dr. Davis, a non-treating physician, on March 7, 1994 revealed similar limitations: ability to lift at least ten pounds frequently, no substantial impairment of Baker's ability to sit, stand or walk, restrictions on his ability to reach on the left side, and some probable restrictions on kneeling, crouching and crawling. *See* Record at 148-51.

10. Baker reports that he has been taking aspirin and tylenol for his shoulder and back pain, as well as ant-inflammatory and arthritis medications. *See* Record at 126, 128, 130. He reports that the over-the-counter medicines always relieved the pain. *See id.* As of January 1997 and March 1998, Baker was taking only over-the-counter medications for pain, *see* Record at 144, 183, although there is evidence that at various times in the past he took prescription pain medications when his shoulder would dislocate. *See* Record at 142 (propoxyphene HCl), 178-80 (Relafen and Tylenol #3).

11. Baker was evaluated by a psychologist, Dr. Clifford Morgan, on October 20, 1994 for depression and alcohol dependence. *See* Record at 154-160. Dr. Morgan diagnosed Baker as suffering from alcohol dependence and major depressive disorder. *See* Record at 160. Dr.

Morgan noted that Baker had average to above average intelligence and the ability to succeed in vocational technical courses or college courses, but that Baker did not want to do "desk jobs." *See* Record at 158-59. Morgan recommended referral for brief psychotherapy, vocational counseling, and enrollment in basic education classes, as well as making "sobreiety a requirement for continuation of rehabilitation services." Record at 160. In March 1995, Baker was evaluated by an assessment counselor with the County of McKinley DWI Intervention Program in connection with his third DWI as scoring very high on the Beck Depression Inventory. *See* Record at 172-73. There is no record that Baker sought treatment for his depression outside of these two evaluations. *See* Record at 47.

12.     Baker reported a series of seizures in 1997 and 1998. *See* Record at 44-45. Baker was placed on Dilantin, and reported no seizures since he was placed on the medication. *See* Record at 45.

13.     At Step Five in the sequential analysis, the burden shifts to the Commissioner to show that Baker could perform other jobs that exist in substantial number in the national economy. *See Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). The Commissioner can meet this burden through use of the so-called "grids," or Medical-Vocational Guidelines, 20 C.F.R. § 404 Subpt. P, App. 2. *See Daniels*, 154 F.3d at 1132. However, the "grids" cannot be applied conclusively unless that claimant's residual functional capacity, age, work experience, and education precisely match a grid category. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). Baker was less than 35 years old at the time of the hearing, and had obtained a GED. *See* Record at 28, 33. His previous employment was skilled work as a mechanic. *See* Record at 145. Thus, Rule 201.25 will apply if Plaintiff has the residual functional capacity to perform at least

sedentary work.

14.     Plaintiff objects to the finding of the ALJ at ¶ 6 that the limitations imposed by his left shoulder injury should not prevent him from doing sedentary work.  The ALJ credited findings of Drs. Altman, Davis, Herrera, Dillon and Morgan that Baker could not use his left arm overhead.  *See* Record at 18, 147, 150, 185, 193.  The ALJ also partially credited Baker's subjective complaints of pain, but found them to be exaggerated.  *See* Record at 18.  As a result, the ALJ lowered the evaluation of Baker's residual functional capacity from light, as found by some of the medical sources, to sedentary.  *See id.*  The ALJ determined that sedentary work would not require overhead use of Baker's left arm.  *See id.*

15.     The mere presence of a nonexertional limitation does not, by itself, preclude reliance on the grids.  *See Ray v. Bowen,* 865 F.2d 222, 225 (10th Cir. 1989); *Baca v. Shalala*, 907 F. Supp. 351 (D.N.M. 1995).  However, where the non-exertional limitations significantly compromise the range of employment opportunities available, then it is improper to rely on the grids.  *See Shelman v. Heckler*, 821 F.2d 316 (6th Cir., 1987).   Plaintiff is correct that the use of both *hands* is required for most jobs.  *See Foote v. Chater*, 67 F.3d 1553, 1559-60 (11th Cir. 1995).  However, Plaintiff has not established that he cannot use his left hand.  The evidence in the record shows only that overhead reaching or lifting with the left arm, or pushing and pulling with the left upper arm, are restricted.  *See* references *supra* ¶ 13. The ALJ found that these nonexertional limitations are not incompatible with sedentary work.  *See* Record at 18.  Sedentary jobs generally require bilateral finger dexterity, but limitations or restrictions on the ability to push or pull will have little effect on the unskilled sedentary occupational base.  *See* Social Security Ruling 96-9p.  The record indicates that Plaintiff does not want to work at sedentary "desk jobs"

and keeps trying to do medium or heavy duty mechanic work, but the record does not show that he has any functional limitation that would prevent him from doing sedentary work. *See* Record at 158, 145, 41. I propose finding that the ALJ did not err in finding that Baker's left shoulder nonexertional limitations did not significantly reduce the unskilled sedentary job base available to him so as to preclude application of the grids.

16.     Plaintiff also claims that the ALJ erred in finding that his depression was not a severe impairment. Social Security regulations require the ALJ to evaluate mental impairments using a two-step approach. First, the ALJ must determine whether the impairment satisfies the "A" criteria of a medically determinable impairment. *See* Subpart P, App. 1, § 112.00. The ALJ found that Baker's depression satisfied the "A" criteria for major depressive disorder. *See* Record at 21. Next, the ALJ was required to evaluate the severity of the impairment using the approach of 20 C.F.R. § 404.1520a (b)-(c). Following this approach, the ALJ determined that Baker's impairment caused no restriction of activities of daily living, no difficulties in maintaining social functioning, no deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner, and no episodes of deterioration or decompensation in work or work-like settings. *See* Record at 21-22. As a result of these findings, the ALJ applied the rule in 20 CFR §404.1520a(c)(1) to conclude that Baker's mental impairment was not severe.

17.     Plaintiff argues that the ALJ's findings that his depression caused essentially no functional loss or restrictions on his daily activities is not supported by substantial evidence. In particular, Baker claims that there is evidence he has lost his appetite due to depression and his

weight fell from 160-170 pounds down to 134.[1]  However, this evidence is contradicted by the record, which shows that Baker's weight was always in the range of 138-145 pounds from 1994 through 1998.  *See* Record at 34, 149, 184.  Baker also claimed at the hearing before the ALJ that he has sleeping problems.  *See* Record at 48.  However, there is no corroborating evidence in the record - not even a single mention of sleeping problems by Baker to his physicians or during the psychological evaluation by Dr. Morgan.  *See* Record at 154-60.  Plaintiff claims that he doesn't want to see people much or have social interactions, and that he depends heavily on his family for his needs.  Again, the record does not support these statements, as he hosted two parties for friends in the few months before the hearing, *see* Record at 47, and frequently has friends and family over for visits, *see* Record at 49, 156.  The record also shows that Plaintiff does occasional jobs to help out friends, fixes some things at home, and took the initiative to work as an auto mechanic for a few days a couple of months before the hearing.  *See* Record at 40, 41, 156.  Based on this evidence, I conclude that substantial evidence supports the ALJ's findings that Baker's mental impairment does not restrict his daily activities or cause a loss of functioning in any of the four areas listed in 20 C.F.R. § 404.1520a (b).  Therefore, I propose finding that the ALJ's conclusion that Baker's mental impairment was not severe is supported by substantial evidence and is based on a correct application of the law.

18.     Plaintiff next argues that the ALJ's finding that he exaggerated his pain is erroneous.  I note first that the ALJ did, in fact, partially credit Baker's complaints of pain and lowered the RFC from light to sedentary based on those complaints.  *See* Record at 18.

---

[1] This appears to be an error by Plaintiff's counsel.  The evidence in the record is that Plaintiff's weight was about 138 pounds at the time of the hearing.  *See* Record at 34.

However, the ALJ found that to the extent Baker claims the pain to be as disabling as he does, it is exaggerated. *See id.* Plaintiff is correct that the record shows occasional use of prescription pain medicine by Baker when his shoulder dislocates. *See* Record at 180 (Tylenol #3 prescribed after 1993 dislocation); 142 (propoxyphene HCl "when shoulder pops"). However, the record also indicates that for routine daily pain, Baker takes only over-the-counter medications, and they are effective in relieving pain *See* Record at 144, 126, 128, 130. Thus, there is substantial evidence to support the ALJ's findings that Plaintiff's pain reduces his RFC to sedentary work but is not completely disabling.

19. The ALJ also considered Baker's seizure disorder, and determined that it did not meet the durational requirements of 20 C.F.R. § 404.1509 (expected to result in death or have lasted or be expected to last at least twelve months). *See* Record at 16. Substantial evidence supports this finding, as the seizures were first observed about nine months before the hearing and appeared to be controlled as soon as Baker was given Dilantin medication. *See* Record at 44-45. Substantial evidence supports the ALJ's findings that Baker's seizure disorder was not disabling under the Social Security regulations.

20. Substantial evidence supports the ALJ's use of Rule 201.25 to find that Plaintiff was not disabled.

### Recommended Disposition

The ALJ applied the correct legal standards and the decision is supported by substantial evidence. I recommend that Plaintiff's motion be denied, the decision of the ALJ affirmed, and this case dismissed. Timely objections to the foregoing may be made pursuant to 28 U.S.C.

§636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

                                         Leslie C. Smith
                                         UNITED STATES MAGISTRATE JUDGE

F:\aaSS Orders\99-1014 pfd.wpd